Case number 18-7167, Coley Camara, individually and on behalf of all others that were situated, and on behalf of the general public of the District Court of New York and Mastro's Restaurants LLC, I'm telling you, Mr. Matlin, I'm going to tell you, Mrs. Santella, for the applicant. Mr. Matlin, good morning. Good morning, Your Honors. May it please the Court, my name is Gerald Matlin and I represent Mastro's in this appeal. We submit that the District Court erred below in denying the motion to compel arbitration and to dismiss. It erred when it applied D.C. contract formation law to the record facts and the legal standard for what constitutes assent under the Federal Arbitration Act. We believe that the order below is not supported by the record and is inconsistent with Supreme Court decisional law. The first point we'd like to make is with respect to the plaintiff's declaration that was interposed to try and get the denial of the motion. It is at Joint Appendix 52 in paragraph 3. The second sentence in that particular paragraph is what the case is all about. The plaintiff indicated that he had not seen the arbitration agreement and did not sign it and the District Court believed that absent a signature under the case of Bailey, it could not be, the motion to compel arbitration could not be granted. We believe that is error. We put in the record an extensive array of facts and evidence with respect to the rollout of the program. We had the affidavit of our human resource manager, Laura Jasso. That's at Joint Appendix 34. And then the affidavit of the general manager of the restaurant, that was at Joint Appendix 26. And what happened was in June of 2015, Mastro's rolled out its arbitration program. Managers talked to all the employees and were instructed to get signatures. There was a database into which managers recorded that an employee had signed off on the arbitration agreement. They were kept in a folder and after the lawsuit was filed, despite efforts to find that folder, the plaintiff's signed arbitration agreement could not be found. But there was a data entry that showed that the plaintiff signed the arbitration agreement on June 25, 2015. We submit that insofar as the District Court indicated that under Bailey there had to be a signed arbitration agreement, that was error. There can be assent implied in fact and the District Court disregarded that particular case. Yes, that was what the judge said. We submit that the plaintiff's declaration did not engage the facts that Mastro's had put of record. There were two things. Why not? Because the plaintiff... He said he never saw an agreement and he never signed one. The plaintiff hired an attorney who sent two letters to the employer and said, my client does not agree to the... The videotape shows him not signing. Wouldn't that be conclusive that he hadn't consented to the arbitration? That would certainly be different facts that are in the record here. Well, I know it's different facts. That's why I said it's not. And that would be equivalent or tantamount to what the court said in the Bailey case was an indication by the plaintiff that he rejected and did not accept that. But in this particular case... Well, we don't know what he did. The videotape didn't have audio. We just saw that he looked at it and walked away and didn't sign it. Right. That would be a different set of facts that were here. I know that. Wouldn't that at a minimum raise a serious question about a material fact? That could, although in the Weicker case, there were indications that sometimes workers say, I don't want to sign it. But the policy of the company is this is a term and condition of employment. And there's a legion of case law around the country under state law and various jurisdictions that continuing to work, knowing that the employer has an arbitration agreement, is implied assent and consideration to support the agreement. A worker doesn't have a veto with respect to that particular arbitration program. He said he didn't even see the agreement. Right. But he didn't deny the existence of the rollout or that it was going on or his colleagues are undergoing it. He didn't confirm that either. Well, he had the opportunity. He had a very cursory declaration, paragraph three, second sentence, simply says, I didn't see it. I didn't sign it. He didn't say he didn't know what was going on or that the arbitration agreement. Did you take his deposition? No. All this occurred before Discovery opened the day after the Supreme Court issued its ethics systems decision. And then under the judge's ruling, you would have the opportunity to raise those questions in a deposition. Presumably, yes. When the case would be remanded, that would be a factual issue. But here, we think our case is closer to the Weikert decision that was cited below. The district court judge did not discuss where, after knowledge of the arbitration agreement, there was implied assent to his terms and conditions by continuing to work. And we think that's precisely the window here where the district court judge erred in failing to find assent under D.C. state law, which was a question of law for the judge by focusing on the readily distinguishable case of Bailey rather than the Weikert case, which was much closer to our situation. In essence, we submit that Mastro's was denied the benefit of its bargain. We filed a motion for the court to take judicial notice of the fact that 11 arbitration agreements have been initiated by Plamps Council on behalf of the Plamps co-workers. Those are now ongoing. We have a very inefficient set of litigation facts before us, insofar as one part of the case involving Mr. Kamir is in the district court, 11 proceedings in arbitration showing how inefficient it is. We would respectfully submit that this court should reverse and remand and instruct the district court judge to enter that motion to compel arbitration. I'll reserve a few minutes for rebuttal after my colleague gives his argument. Thank you. All right. Mr. Santillo. May it please the court, my name is Andy Santillo, and I am here representing Mr. Kamara and the collective, the proposed collective here. The question that was before the district court was whether defendants satisfied his burden of demonstrating through clear and unmistakable evidence that Plaintiff had a distinct intention under District of Columbia law to be bound by all material terms of the arbitration agreement. Arbitration, first and foremost, as the Supreme Court has said, is a matter of contract. Based on the factual record before the district court, the district court held that the defendant failed to satisfy this burden of either an express or an implied contract with Mr. Kamara. To disturb this finding, the defendant must show that the district court committed clear error and that its factual findings were not plausible, not permissible, or illogical. We respectfully suggest that they have failed to carry this burden. What was before the court, as it characterized, was the prototypical factual dispute. One thing my colleague forgets to overlook is they have a policy obtaining executed agreements from their servers. They do not have an executed agreement from Mr. Kamara. He submitted a declaration saying he never saw the agreement, he never signed it, and he never agreed to its terms, and he never thought he gave up his rights that are available to him outside of arbitration to be able to proceed in federal court. This is completely consistent with the big elephant in the room fact that the company, despite this policy, where it requires people to get executed agreements, does not have a signed agreement from Mr. Kamara. Counselors represent they've asked for judicial notice of certain arbitration agreements that have been filed. There was an opt-in process. Certain individuals joined this case. The company has provided us arbitration agreements that are signed and we have confirmed are signed by our clients. We have pursued arbitration for those individuals. However, there are several individuals besides Mr. Kamara they have failed to provide arbitration agreements for. This includes other individuals at this District of Columbia restaurant. So while counsel may sit there and say that they had a process in place, this process is not foolproof. Moreover, under the summary judgment standard that was before the court, all justifiable inferences, Mr. Kamara's evidence is to be believed, and all justifiable inferences are to be read in his favor. We have a lack of an agreement of the existing contract. We have Mr. Kamara asserting with a penalty of perjury that he never saw it, signed it, or agreed to its terms. Counsel has said they put together declarations talking about the program that they have. What they failed to do and what the district court acknowledged was they failed to put specific information. They failed the general manager who they provided a declaration for. He did not say, I sat down with Mr. Kamara. It was a nice June day. I know it was June because I was going to go see the Nationals play this afternoon. And I sat down with him and I went through this agreement. I obtained a signed agreement and I put it in his file. After a diligent search, I cannot find his agreement. There is nothing to that effect. What about implied assent? Implied assent, I would respectfully suggest that under this court's authority in Bailey, implied assent alone is not permissible. If I may, if I could read from page 747. This court held that the plaintiff signaled nothing when he remained in the employment of Fannie Mae during the issuance of the arbitration policy. That's at 747. The court on page 746 also rejected the idea that the plaintiff had to come forward and demonstrate an absolute rejection of the policy. That was not his burden. That would completely turn the burdens upside down here. What counsel is asking is that our client come forward and prove a negative. As was before the district court, the policy was the general manager supposedly made these notations in the internal database. The district court acknowledged that. Our client as a server is not going to know why they were there, why that was mistaken. All he would know is that he never saw the agreement and he tested to it, which is completely consistent with the fact that there is no agreement. I believe a reasonable juror from here in the District of Columbia could find that, guess what? There was an error made by the company. Sometimes HR makes mistakes. I represent workers and every once in a while you hear a comment, I started in October of 2009. No, I started in June of 2009. Hey, my GS level, I had me down to GS5. I was really a GS6. Errors are made by HR and a reasonable juror could find that, hey, there's a missing agreement here and there was an error by HR that was made about this notation. Moreover, the lack of specificity by Mastro's in providing a factual record to rebut our assertion consistent with the lack of an agreement created the prototypical factual dispute that the district court recognized using the summary judgment standard where the plaintiff's evidence is to be believed and all inferences in their favor means that it was able to say that he had not agreed to the arbitration program and agreed to be distinctly bound on all material terms as required. The class hasn't been certified, is that correct? The state class has not. This is brought a claim under the Fair Labor Standard Act in which there was a conditional certification. Is this for overtime pay? It's for the tip credit. These are servers. Wait a second. It's for a tip credit, Your Honor. What it is, these individuals were servers who were paid a sub-minimum wage under both the federal law and the District of Columbia law. They were typically paid about $2.77 an hour plus tips. Under the FLSA, which has a minimum wage of $7.25, and then the District of Columbia, which had a minimum wage of $9.50 to $12.50 during this time frame, companies who have people in tip professions are allowed to take what's called the tip credit, which means not pay the difference between the minimum wage and the sub-minimum wage of $2.77 an hour. As long as it's able to be made up with tips and also that the servers are able to retain their tips and not pool them with individuals who do not customarily and regularly receive tips. Our argument as below, and this will be decided going forward, whether sharing the tips with the wine runners and baristas, who we say do not have sufficient customer interaction to be receiving tips from this pool, or spoil the pool because of this, the company couldn't take advantage of that tip credit. In other words, not pay the minimum wage and just count on tips to make the difference. But the conditional certification has been sent. There's income tax consequences too, under Fior di Italia, the Supreme Court. I mean, these would be wages that would be, any recovery would be wages that would be taxable. I think if that's really what I was asking. But conditional certification was provided. Notice was sent out. I believe there's about 70 individuals who joined. I think about all but 15 of them have signed arbitration agreements. This includes Mr. Kamara and two other individuals here in the D.C. restaurant who the company has not provided us signed agreements for. So, you know, going forward, certain individuals have pursued the arbitration because we believe that the company has met their burden to show that they distinctly agreed to the terms of the arbitration agreement with a signed agreement. If there was a signed agreement from Mr. Kamara, that would have been the start and the end of this. So we believe that the district court, with the prototypical factual dispute, made a call in considering the burdens that are before the parties. We also believe that the Supreme Court's decision in EPIC does not alter this. It is important. Just last year in New Prime, Judge Gorsuch, writing for a unanimous majority, held that the Arbitration Act is not unconditional. At page 537, he said, while the court's authority under the Arbitration Act to compel arbitration may be considerable, it is not unconditional. And because of that, we do not believe that this implied argument would be able to carry water in light of this court's decision in Bailey. Moreover, as we cite in the papers, there have been several appellate courts that have held that have been confronted with similar arguments trying to compel arbitration. Things like the plaintiff signing the arbitration agreement, but the defendant not signing it. Things like a typo where the name of the defendant is not correct. Even though the individual signed the agreement, these circuit courts have said under the respective state laws, that does not show that they are bound by the arbitration agreement. This is after EPIC, and in light of the argument that counsel makes, which we respectfully disagree with, that there is no implied acceptance under EPIC, and then also that a plaintiff cannot merely, excuse me, that defendant cannot show that an employee waived the right to pursue in federal court absent satisfying the requirements of the D.C. law and contracts. And again, we would suggest that based on the prototypical factual dispute that was before the court, that the defendant is unable, the master is unable, to satisfy the clear and erroneous standard that it has to here for this court. As we cite from the Seventh Circuit, the decision of the district court has to not just be wrong, has to be so wrong that it hits you with the force of an unrefrigerated five-week-old dead fish. And we believe that the court has failed, that the defendant has failed to satisfy that burden here. Thank you. Thank you. Mr. Botten. Thank you, Your Honor. For rebuttal to Judge Randolph's question, the order that's before you on appeal, the second half of it, which we did not appeal, was the certification of the collective action and 83 servers opted into the case. That's where those 11 people came from that had arbitration agreements that went voluntarily into arbitration. I wanted to make a point with respect to counsel's citation to Bailey in that it somehow rejected the concept that implied assent can never be sufficient under District of Columbia law to support imposition of an arbitration agreement. Bailey never went that far. Bailey simply said on the facts before it, there was no meeting of the minds. It didn't have an occasion to address the concept or doctrine of implied consent, implied assent. The case that we cited and the case that plaintiff's counsel did not talk about was the Weikert case where implied assent was found and it was based on someone working after knowledge of the arbitration agreement despite the fact that they didn't sign it. At bottom, this case is not a dueling affidavits case because the cursory affidavit of the plaintiff at paragraph 3, second sentence, that's the whole case right there, and it does not engage with the array of evidence that was in fact submitted by masters with respect to the rollout of the program and the plaintiff not denying knowledge of that rollout or the fact that arbitration agreements were imposed on the workforce. For these reasons, we would respectfully submit that the case should be overturned. Thank you. Thank you.
judges: Henderson, Rao, Randolph